May it please the Court, at issue in this appeal are various decisions of the District Court pertaining to patent validity and direct and indirect infringement. The main errors committed by the District Court can be summarized into various categories that I'll discuss today. On the question of infringement, did you put on, in opposition to the summary judgment motion on infringement, did you put on an expert witness who viewed the testimony and the documents and said, I conclude that there's infringement here? No Judge, we didn't. What did you put on? You referred to these claim charts, but I don't see that those are evidence. Does the claim charts summarize any of the evidence? Deposition testimony primarily, Your Honor, as well as... Where do we find the claim charts that you're referring to? Your Honor, if you'll give me just a minute. A111 through 116. 111? Yes. These are actually the underlying statement of facts in support of our motion for summary judgment. That's one place where we can find the evidence summarized. But the claim charts themselves don't summarize the evidence. There are claim charts that summarize the evidence as well, and it's the same evidence that are in these... Where do we find the claim charts that summarize the evidence on infringement? I saw some references of evidence on the claim charts in validity, but I wasn't able to find any claim charts that summarized the evidence on infringement. Your Honor, I'm not sure whether the claim charts themselves are in the record. However, we do have the Court referencing those claim charts and stating that Engate had prepared an element-by-element analysis of the claims and a comparison to the methods and the systems that were accused of infringement. How are we supposed to make a determination that there is no basis for summary judgment when we don't have the evidence that we're relying on? We do judge. In fact, we have, as I said, the statement of facts in support of summary judgment that summarizes all of the features that we claim to satisfy the various claim limitations. But is there a link between the Esquire offer and the claims? Yes, Judge, there was, and that was submitted below. But the appellees below never challenged the infringement finding of the Court based on a lack of a limitation or limitations from the systems and methods accused of infringement. I read it differently. I see them saying there wasn't an offer to sell something that included claim limitations. And in response to that, you should submit evidence that there was an offer to sell something that included claim limitations. And I think what we're asking about is where do we find the evidence that that's the case that supports that position? Again, Your Honor, as I pointed to earlier, the various factors or the various facts that we submitted in support of summary judgment on the claims on which we moved. How are we supposed to find it? That's the problem. Here you are. You're arguing that there was a genuine issue, that you submitted evidence that created a genuine issue. Where is it? You say you didn't put on an expert witness. The claim charts aren't here. How are we supposed to agree with you that there was a genuine issue of fact when you haven't shown us what the evidence that raises the genuine issue is? Because the decision on summary judgment, Your Honor, was that the district court didn't find a sale of anything specific, not that what was on sale lacked a limitation or limitations from the claims. And, in fact, the court below said, I was never called upon to determine whether a particular system or use infringed. The only thing I was ever called upon to determine. Where does the court say that? Your Honor, it was in a decision denying the appellees their fees. I need the next page, Your Honor. It's page 81296, Your Honor. And if we look at the first full paragraph, it says the court was never called upon to determine definitively whether anyone had directly infringed. Our initial ruling in favor of defendants on the claim of vicarious liability was based not on the proposition that no one had infringed the patents, but rather the defendants were not involved in determining what software systems independent court reporters used. In other words, the court wasn't called upon to say that, for example, LiveNote, as used in a particular system offered for sale by the defendants, lacked one or more of the claim limitations. The only thing the court was required to do or was asked to do by the appellees below was to determine, given what was on their website and the other information they disseminated, whether that was sufficient to constitute an offer of sale of something that could be the basis of an underlying claim for infringement. There was never a selling of anything, was there, because the attorneys were already using LiveNote or CaseView or some other thing, I mean the court reporters. So nothing was sold. Well, there was evidence at some point that the appellees had sold the software itself, but they had stopped doing that. But there was the offer for sale of a method. In this case, the court reporting method that the appellees and their court reporting independent contractors were providing for the attorneys. Your Honor, however, our job is to appeal the decision as we find it. The decision here was not that a particular claim limitation was missing. That was never anything the district court found and isn't, in our opinion, the proper subject of the scope of the appeal. It's simply, given what the appellees did in their advertisements, was that sufficient to constitute an offer to sell something? You're complaining about a lot in your brief, but as I look at it, I get the sense the infringement issue is not really your strongest point. You don't seem to think the infringement issue is our strongest point as opposed to the invalidity issue. That would be true, Your Honor. We do believe that. That's what you're saying about your brief. Do you want to comment a little on that? Yes, Your Honor. In this case, there are at least two problems that we find with the invalidity decision of the court on the various claims. The first is that either after construing the claims himself or after receiving the parties' agreed-to construction of claim limitations, the district court then ignored those claim constructions in evaluating the validity of certain claims. We can start with Claim 7 of the 395 patent, which the district court construed as covering the capability to conduct searches on a real-time transcript while it is being generated. Later, in finding that this claim was anticipated, the district court stated that a system that would permit further searches into the portion of the transcript generated after the user entered search mode certainly would have been more useful, but that is not what Claim 7 required. So the prior art indisputably required leaving the real-time transcript to conduct searches. Thus, the only way that the district court could find that Claim 7 of the 395 patent was in fact anticipated was to ignore its original construction of this claim, which required searching the real-time transcript. And that was the construction that Engate relied upon in marshalling its evidence for trial. Now, for several of the subject claims requiring synchronization of text, video, and audio signals... But on that, it takes me a while to collate through all the different claims and patents, but on that one you had pretty specific public use in Chicago and Phoenix, didn't you? Of some things. Well, there's no dispute that the CIC courtrooms are prior art, Judge Rader. We're not disputing that. The question is what did they actually do in light of specifically... We have testimony of Judge Strand himself telling what he was doing, and there's rather extensive record evidence on those uses. In fact, the district court found this. All of that evidence supported, for example, in the case of the search claims, that you had to leave the real-time transcript to do the searching. And there's really no dispute among the parties as to what the prior art is and what it does. The question is... I thought what the judge was saying about this particular claim was that the prior art had the ability to search the real-time transcript, but not display it at the same time. But the display function wasn't part of the claim. This was Judge Strand or the district court judge, Your Honor? The district court, yes. The district court judge said that you could display the real-time transcript. He also said that the claims are not directed to real-time transcript display per se, which is true. What was missing in the prior art, according to you, is the ability to display the real-time transcript. In other words, the prior art could search the real-time transcript, but it couldn't display it at the same time. Actually... And the court here says, well, that's not necessary because that's not part of the claim here. Actually, no, Judge. The district court actually said more. The district court acknowledged that it was not possible to search the real-time transcript at all, but that that was not what was required by the claim. And, in fact, the quote that I read before regarding the usefulness of a system that would allow you to search going forward would be useful, but that's not what Claim 7 requires, indicates that the district court very clearly believed that Claim 7 didn't require searching the real-time transcript. In other words, it was okay that one left the real-time mode and went into the search mode, basically being able to search what was ever in the memory buffer up to that point, but if there was any additional testimony that came in while the search was being conducted, that was not part of the text that was searchable. So the district court very clearly determined, after having said that Claim 7 requires searching the real-time transcript, that that wasn't required anymore, and the prior art, which didn't allow you to do that, anticipated the claim. We also have these other claims, as I mentioned, about synchronization of text, video, and audio signals. Now, the appellees proposed, and the parties ultimately agreed, that these claims, as properly construed, required that the audio and video signals be played back during the proceeding, which meant that there had to be some synchronization in real-time between the audio and video on the one hand and the text on the other. However, in finding these claims anticipated after trial, the district court stated those claims did not require the real-time synchronization of audio, or I'm sorry, did not require real-time feeds of the video and audio signals to the attorney terminal. Now, the only way, again, for the district court to have found this claim anticipated was to disregard the agreed-to construction of the parties, and that was the construction, once again, that Engate relied upon in marshalling its evidence on the issue of validity. Finally, the district court held that Claims 1 and 3 of the 186 patent are fatally indefinite because the specification of that patent fails to disclose structure corresponding to an analysis means. Yet the parties agreed to use the appellees' construction, once again, of this claim limitation, and the appellees specified that the CAT system performs the subject analysis, which is what is taught in the specification. The district court simply ignored this agreed-to construction in finding that these claims were fatally indefinite. And briefly, on the issue of novelty, Your Honors, another error that the judge committed with regard to a variety of claims is simply filling in the blanks in the prior art. In other words, ignoring the gaps that were in the prior art as compared to the claims. If we look at Claims 26 through 28 of the 952 patent, these dealt with the synchronization of audio, video, and text as well. And the court had construed these claims as requiring a system that converts spoken words to text that is transmitted to user computers. Engate pointed out to the judge below that the appellees were relying on prior art that related to closed captioning broadcast to a television, and the television is a computer. The district court said, however, that we find the distinction between a television screen and a computer screen immaterial to the substance of the patent. In short, Your Honors, the fact that there was a distinction at all precluded a finding of anticipation between that art. Do you want to save any of your rebuttal time, Mr. Summers? Yes, Your Honor. Thank you very much. Let's turn then to Mr. Nissen. Good morning, and may it please the court. Your Honors were correct in finding in your questions about what evidence did Engate put on regarding infringement. The fact of the matter is they put on no evidence. They seem to be saying that when you moved for a summary judgment, you were just saying there wasn't a commercial offer for sale here, and that you didn't move for a summary judgment on the ground that whatever offers for sale there were didn't include the claim limitations. That is their statement. It's flat wrong, Your Honor. Do we have the motion so that we can tell from the record? Yes, you do. I will say, however, I was going to quote from our reply brief, if I could. Quote, Engate offered no evidence, admissible or otherwise, regarding 19 of the 26 asserted claims. And then, quoting this court's ruling in Johnston, summary judgment must be granted when defendant points that Plano failed to put forth evidence supporting a finding that every limitation in the asserted claims were met by Esquire. That is from our reply brief. What about the opening? I don't have the quotes there, but in the opening brief, what we said is they haven't proven, because you have to, below they moved for both offer of sale and use. It wasn't just offer of sale. They have now abandoned use on appeal. And we pointed out that there was just no evidence of anything, that all they had is they had seven claim charts that consisted of quotes from various third parties, whether it be Live Note, Case Catalyst, National Law Journal, and they took one from column A, one from column B, and said, see, here, this limitation is met here. This limitation is met over there. Put them all together, and you have an infringement. We pointed out numerous problems with that, doing it that way. First, all those third-party documents were in admissible hearsay. The law in the Seventh Circuit is very clear that for summary judgment must be based on admissible evidence. The case is- I'm not worried so much about that. What I'm concerned about is when you move for summary judgment, did you limit yourself to saying there was no commercial offer for sale? No. Or did you say that there was no commercial offer for sale of anything that included the claim limitation? There was no commercial offer for sale of anything that included the claim limitation. We freely admit, and that is what this case is about, that we offer real-time court reporting. Engate does not have a patent on real-time court reporting, but that has been the basis of their case. Can you give us a site where the argument is made that the claim limitations aren't satisfying? Well, I'll tell you what. Can I have some time to rebuttal? If I could, I'd like to- I can find it at that point. Would that be all right? Yeah. Okay. Excuse me, Your Honor. What about the invalidity argument about these claims 26 through 28 of 952? The district court seems to have disproved the term terminal as being a television set. Yeah. I read in the past that that's a- that's a far- that's far from the specification of a terminal. Well, there's several. First off, as we stated, Engate, when they wanted to talk about computer terminals, talked about computer terminals. They talked about computer terminals in- they talked about computer terminals in their specification, and when they want to say computer terminals, they say computer terminals. When they want to say terminal, they say terminal. Engate below put forward- Is there any language in the specification that suggests that a terminal includes a television set? I think so, Your Honor, and what I- there's no particular language describing terminal beyond just terminal. However, Engate below put in a definition for terminal, and in that definition, if I can find it here, it says that A992, a device often equipped with a keyboard and a video display through which information can be displayed- can be entered or displayed. As we explained below, that clearly covers a television. It says a device often equipped- What are you reading, Your Honor? This is Engate's definition of terminal at A992 in the joint appendix. One of the things that- speaking of that, in the reply brief, Engate makes a- What about the specification? Where do we find the specification? It just says terminal. It says- There's no mention of television sets in the specification. The specification only uses the word terminal, so the question is, what is a terminal? Does a terminal- In the context of the specification, it's talking about computers, isn't it? I don't think so, because again, in the specification, when they want to talk about computer terminals, they say computer terminals. And these features are all passive features. They have no input by the attorney. That's the reason why closed captioning anticipated these versus some of the other- I would call them active features, where a transcript is sent remotely, and on the remote transcript, you have actions by attorneys, and the actions by attorneys need keyboards and whatnot. But on these passive features, all the attorney does is look at his- has his cathode ray screen, his cathode ray tube, which is a terminal, which is a television. And again- You said this might be a pretty good obviousness argument, but you didn't make an obviousness argument. Well, Your Honor, that's incorrect. We did make an obviousness argument. We made it on summary judgment. The law on this particular case, we said in any event, if this isn't anticipated, it's certainly obvious, because the way the prior art worked, like in the case of the Clarence Thomas confirmation hearings, which was in the prior art, there was a camera at the confirmation hearings. The audio and video were sent to court reporters in Vienna, Virginia, who used the exact same CAT systems that they used in court to put the transcript on the audio and video. It was then sent out over the airwaves to be seen on closed caption television screens. The fact it was the same reporters doing the exact same thing was an obviousness argument. We did raise that below. On summary judgment, we found it was anticipated. Now, at trial- So your motion for summary judgment said that these claims were obvious as well as anticipated? Yes. These in particular. I'm sorry, Your Honor. I didn't realize I was going to have to point that out. Again, I will get that on my rebuttal. The court said that we had raised, excuse me, waived obviousness below, and Engate has argued that therefore we can't raise it now. Engate is flat wrong on that. This court has stated that you may only cross appeal where you are seeking to expand your rights. We were not seeking to expand our rights. The lower court found these claims- Whether you raised it below. That's the question. And there seems to be a dispute. We can't resolve the dispute without seeing what you said. Okay. As regards the real-time searching claim, Engate makes the same mistake on all the claims that modify the transcript. Whether it's through real-time searching, whether it's through putting notes on the transcript. What they say is because the prior art that we demonstrated in court didn't continue to scroll, it cannot anticipate these claims. But Engate is flat wrong on that. If you look, in the case of the real-time searching, what we did is we had the prior art system from the 1980s, and we had a court reporter there, a second court reporter, who transcribed what I was saying as I went along. Judge Kennelly is a fact finder, sat at the attorney terminal, and he searched for things as they went by. And the first time he tried searching, he searched for things. And when he started searching, the transcript stopped scrolling. But he could search anything, including even after the transcript stopped scrolling. And if you look at the language of the claim, Claim 7 of 395, generating a transcript in real-time. We showed that. We had a court reporter doing that. Storing the transcript. This transcript was stored on the court reporter's computer and the attorney computer. Accepting during generation of the transcript a first search request. We had that. Judge Kennelly put in a search request. Identifying at least a portion of the stored transcript corresponding to the first search request. We did that. Up came what he searched for. Displaying during generation of the transcript at least a portion of the transcript identified. It doesn't say displaying the entire transcript. It says displaying during generation. Also, Judge Strand testified, because we only had one attorney terminal in our courtroom for our demonstration, but in Phoenix, where there were 10 attorney terminals, he stated that when one attorney stopped scrolling to search, all other terminals continued with the transcripts going down. That is what was required to anticipate these claims. As Judge Kennelly said, it's not just that we proved by clear and convincing evidence that we proved by, I can't remember his exact statement,  that these claims were anticipated. Engate talks about Claim 4 of the 787 patent and Claim 1 of the 639 patent. These are phonetic translation claims. What they require is the way a CAT system typically works is a court reporter has a job dictionary that has various words that can be translated from the raw steno. Raw steno is not readable by laymen. And you have the job dictionary. It has various words in it. And then you have a general dictionary. The general dictionary would have words like deposition, evidence, so on and so forth. If a court reporter was transcribing this proceeding in her job dictionary, she might put Nissen, might put Judge Rader, what have you, specific names for this particular proceeding. If neither of those two dictionaries had a word in it, rather than putting out raw steno that laymen, attorneys, judges cannot read, the prior art had the ability to put out a phonetic representation of that word that's not in the dictionary. Engate says that that doesn't matter because there's no hierarchy of libraries, but that's just flatly false because the way the software worked is that you started at the top, went to the general dictionary, then the job dictionary, and then the phonetic translation. Indeed, we even put in evidence software that showed the physical hard coding and the testimony about that software of the phonetic dictionary that came after the job and the general dictionary were searched. On our cross appeal, we stated in our opening brief that Judge Canale was wrong because he found Claim 6 of 141 not anticipated because of a limitation that wasn't in that claim. Engate agreed with that, but they made an argument for the first time they didn't make below, namely that you could not send messages back to an individual attorney terminal, but we had clear evidence below that you could, and therefore, that should be reversed, and I'll say the rest of my time. Thank you, Mr. Nesson. Mr. Scornfield. You have about a minute remaining. May it please the Court, two very quick points. First of all, if we look at page 844 on the issue of obviousness, there's a footnote from the Court, and it says, in addition, certain of the argument headings in the defendant's opening post-trial brief reference possible grounds for invalidity that defendants do not actually address, primarily obviousness. Again, the Court deems these arguments forfeited. The Court's correct. Some of these arguments that the defendants are putting forward and the Judge relied upon may, in fact, have been very good obviousness arguments. Engate doesn't agree, but the point is that obviousness was not an argument maintained by the defendants below, and it should not have been the decision of the Court under the guise of an anticipation finding. With regard to the claim charts, I apologize for not having these earlier. If we turn to page A620, we see an example of the claim chart that Judge Dyke was asking about, and this is in the appellee's responsive statement of facts to Engate's motion for summary judgment. And there is a claim chart comparing Claim 4 of the 787 patent to the accused's reporting systems. On the right-hand side are the corresponding features in the accused's system, with citations to, among other things, deposition testimony, the admissibility of which, presumably in a summary judgment context, is beyond dispute. And now Mr. Nissen said that they contradicted this motion for summary judgment on the grounds that limitations are missing. And if we look at the response, we see in the first two paragraphs the claim that this is not admissible evidence. And in the third paragraph, we also have the suggestion that this is an admissible hearsay. Finally, in the fourth paragraph, it says that there is no evidence that any independent court reporter actually used any of these features. So again, the appellees below never challenged the absence of a limitation or limitations from the asserted claims as the basis for a non-infringement defense. They simply and consistently asked the court to find, which it did, that whatever was on sale wasn't sufficient, or whatever they were doing wasn't sufficient to constitute a legally cognizable offer for sale. Thank you.